```
 1  KARL S. HALL
    Reno City Attorney
 2  HOLLY S. PARKER
    Deputy City Attorney
 3  Nevada State Bar No. 10181
 4  parkerh@reno.gov
    ALICE K. HERBOLSHEIMER
 5  Deputy City Attorney
    Nevada State Bar No. 6389
 6  herbolsheimera@reno.gov
 7  CHANDENI K. SENDALL
    Deputy City Attorney
 8  Nevada State Bar No. 12750
    sendallc@reno.gov
 9  Post Office Box 1900
10  Reno, Nevada 89505
    (775) 334-2050
11
    Attorneys for Defendants City of Reno,
12  Jason D. Soto, and Reno Police Department
```

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| APRYL MCELROY and JESSICA TROUP, | CASE NO.: 3:23-cv-00451-ART-CSD |
| Plaintiffs, | |
| vs. | **DEFENDANTS CITY OF RENO, JASON D. SOTO, AND RENO POLICE DEPARTMENT'S MOTION TO DISQUALIFY** |
| RENO POLICE SERGEANT PAUL D. SIFRE (RET.), an individual and in his capacity as an employee of CITY OF RENO; RENO CHIEF OF POLICE JASON D. SOTO (RET.), an individual and in his capacity as an employee of CITY OF RENO; CITY OF RENO, a municipal corporation organized and existing under the laws of the state of Nevada, and its division the CITY OF RENO POLICE DEPARTMENT, a Nevada law enforcement agency, and Does 1 through 20, inclusive, | |
| Defendants. | |

Defendants City of Reno ("City"), Jason D. Soto ("Soto"), and the City of Reno Police Department (the "RPD") (collectively, the "City Defendants"), by and through their undersigned attorneys, Reno City Attorney Karl S. Hall, and Deputy City Attorneys Holly S. Parker, Alice Herbolsheimer, and Chandeni K. Sendall, hereby submit this Motion to Disqualify Plaintiffs' attorney of record, Mr. Jack D. Campbell ("Campbell").

This Motion is made and based upon the Nevada Rules of Professional Conduct 1.9 and 1.11, all pleadings and papers on file herein, the attached Memorandum of Points and Authorities, affidavits/declarations and exhibits filed contemporaneously herewith; and any additional or further evidence this Court may deem just and proper.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

This is a sexual harassment/discrimination case. Plaintiffs Apryl McElroy ("McElroy") and Jessica Troup ("Troup") (collectively "Plaintiffs") filed their First Amended Complaint on November 30, 2023. *See First Amended Complaint* ("FAC"), ECF No. 12. Plaintiffs generally allege that City Defendants discriminated against Plaintiffs by negligently and improperly retaining and failing to train Defendant Paul Sifre ("Sifre") and putting Sifre in a supervisory position knowing that he had previous disciplinary actions for discrimination and harassment; and that Sifre then used his position of authority over McElroy and Troup to intimidate, threaten, and sexually harass them, which created a hostile work environment. ECF No. 12, FAC p. 2, "Nature of the Action."

City Defendants hereby move to disqualify Campbell due to his failure to obtain informed written consent from former client City Defendants, and his unavoidable conflict of interest in this matter.

### II.  FACTS RELEVANT TO THIS MOTION

Campbell, the named attorney of record representing Plaintiffs in this matter, is a former deputy city attorney for City and represented the RPD and served as the City's risk attorney. During his eight years at the City of Reno, Campbell defended City Defendants and most significantly the RPD, while both Defendants Soto and Sifre worked within the RPD.

Listed below are civil litigation matters in which Campbell defended City and the RPD

in similar, if not the same, types of claims alleged as are alleged here in this matter. *See generally*, ECF No. 12, FAC pp. 9-13 (Plaintiffs here asserting claims of "Sexual Harassment and Discrimination," "Custom, Pattern and Practice"; "Deliberate Indifference"; "Respondeat Superior"; "Negligent Supervision, Training and Retention"; and "Punitive Damages".). Campbell is listed as an attorney of record and directly **defended** City, **and** specifically, the RPD in the following cases:

1) *Abbey v. City of Reno*, 2015 WL 13547828 (D. Nev. Mar. 30, 2015), aff'd, 690 Fed. Appx. 538 (9th Cir. 2017)

- Similar claims alleged: Deliberate Indifference; Negligent Supervision, Training and Retention.

2) *Stegmaier v. City of Reno ex rel. Reno Police Dept.*, 3:13-CV-00461-MMD, 2014 WL 4678047 (D. Nev. Sept. 18, 2014)

- Similar claim alleged: Sexual Harassment and Discrimination.
- Similar facts alleged: RPD officer Stegmaier alleged he was sexually harassed by female supervisor. The claim was brought after he voluntarily resigned subsequent to being investigated by City's Internal Affairs department and discipline was recommended.

3) *Sifre v. City of Reno*, 3:14-CV-00060-RCJ, 2014 WL 4232570 (D. Nev. Aug. 26, 2014)

- Similar claim alleged: None, however, required detailed involvement of City's Internal Affairs Department protocols and directly involved internal investigations of Defendant Sifre who is a named defendant in this matter. The case arose out of alleged retaliation against Sifre by his superiors based on protected speech.

4) *Tolan v. City Reno Police Department et al.*, Case No. 3:10-CV-00017 (2013)

- Similar claims alleged: Custom, Pattern and Practice; Negligent Supervision, Training and Retention.

5) *Phibbs v. Utter et. al*, Case No. 3:11-cv-00168-HDM-VPC (2013)

- Similar claims alleged: Custom, Pattern and Practice; Deliberate Indifference; Negligent Supervision, Training and Retention.

6) *Pitsnogle v. City of Reno*, 501 Fed. Appx. 653 (9th Cir. 2012)

- Similar claim alleged: None, however, Campbell received confidential information during representation of City including detailed knowledge of internal City record-keeping systems and documents held by the City's Internal Affairs Department,

Human Resources Department and within the RPD. This case arises from an alleged inadequate investigation of misconduct charge against a City police officer and included claims of malicious prosecution, abuse of process and slander.

7) *Marshall v. Kirby*, 377 Fed. Appx. 643 (9th Cir. 2010)

- Similar claim alleged: Negligent Supervision, Training and Retention.

8) *Collup v. City of Reno Police Dep't*, 2009 WL 10696422 (D. Nev. Nov. 3, 2009)

- Similar claim alleged: Respondeat Superior.

9) *Wishart v. City of Reno, et al.*, Case No. 3:06-CV-00196 (2006)

- Similar claim alleged: Negligent Supervision, Training and Retention.

Through the course and scope of Campbell's legal representation and defense of City and the RPD in these matters, Campbell was provided the opportunity to become intimately knowledgeable of and proficient with the internal operations, procedures, and record-keeping processes of the City's Internal Affairs investigative department and allowed Campbell to become privy to the internal workings of the City's employee disciplinary process within the Reno Police Department and the Human Resources department.

Campbell's detailed knowledge of the inner workings of the RPD and overall City departments can be gleaned from the language Plaintiffs use in the FAC to assert their allegations and phrase their discovery requests. For example, the FAC alleges under paragraph 39 that "[u]pon information and belief (because all records surrounding these numerous IA investigations are in the sole custody and possession of RENO), SIFRE's numerous IA investigations involve **confirmed and sustained complaints** involving racial profiling, excessive force, sexual misconduct, sexual harassment, timecard fraud, insubordination and other code of conduct allegations." (Emphasis added). Further assertions are made that only Campbell would have inner knowledge about because of his previous employment and legal representation of City and the RPD when alleging in the FAC that "[t]hroughout SIFRE's career as a Reno Police Officer numerous and repeated incidents occurred requiring RENO to identify SIFRE as an officer with 'problematic behavior' and subjected him to increased supervision, training, counseling, discipline and/or termination." ECF No. 12, FAC Para. 41; *see also* ECF No. 12, FAC

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

Paras. 40, 42-44. Plaintiffs themselves would not be privy to this sort of information and would only have become knowledgeable of this information from Campbell himself.

Similarly, in Plaintiffs Apryl McElroy's First Request For Production of Documents ("1st RFPDs"), many of the requests are worded using phrases and terminology only an internally knowledgeable City employee, specifically an attorney who has dealt with RPD legal matters for multiple years, would be privy to. The 1st RFPDs include the following requests:

> **Request No. 1**: Please produce a complete copy of SIFRE's _personnel file maintained by the Human Resources Department_ for the CITY OF RENO.
>
> **Request No. 2**: Please produce a complete copy of SIFRE's _employee file maintained by the Reno Police Department_.
>
> **Request No. 3**: Please produce a complete copy of SOTO's _personnel file maintained by the Human Resources Department_ for the CITY OF RENO.
>
> **Request No. 4**: Please produce a complete copy of SOTO's _employee file maintained by the Reno Police Department._
>
> . . . .
>
> **Request No. 6**: Please produce a complete copy of all _Internal Affairs investigations_ wherein SIFRE was or is noticed as an involved party or witness pursuant to NRS 289.
>
> **Request No. 7**: Please produce a complete copy of all _Internal Affairs investigations_ wherein SOTO was or is noticed as an involved party or witness pursuant to NRS 289.
>
> **Request No. 8:** Please produce a complete copy of all Reno Police Department policies, procedures, or _General Orders_ related to disciplinary procedures and appropriate discipline for allegations of sexual harassment, discrimination, or _Code of Conduct violations_ as alleged in Plaintiff's Complaint on file herein.
>
> **Request No. 9**: Please produce a complete copy of the _Annual Report issued by the Internal Affairs Department of the Reno Police Department showing the statistics of the type of investigations conducted, the number of citizen complaints, and administrative directed investigations including the results of the investigation and discipline rendered_ from 2011 through 2023.

> **Request No. 10:** Please produce a complete copy of the *disciplinary history of discrimination/harassment charges filed with the Internal Affairs Division of the Reno Police Department* from January 1, 2011 until present.
>
> **Request No. 11**: Please produce a complete copy of the *Annual Reports issued by the Reno Police Department* from 2011 through 2023.
>
> . . . .
>
> **Request No. 15**: Please produce a complete copy of *SOTO's training file maintained by the Reno Police Department* and/ City of Reno.

**Exhibit 1**, 1st RFPDs, p. 4-6. Among other telling signs of internal confidential knowledge and understanding of the inside workings of City, these requests separately and specifically ask for City Defendants to produce three separate "files" for former RPD Police Chief Defendant Soto: his personnel file (Req. No. 3), his employee file (Req. No. 4), and his training file (Req. No. 15). Notably, each request specifies from which City of Reno department the file should be specifically requested and produced from, denoting either the human resources department or the RPD.

Another example of Campbell's internal confidential knowledge gained during his employment at the City is reflected in Plaintiff Apryl McElroy's First Request for Admissions ("1st RFAs") in which requests for admission include the following:

> **REQUEST FOR ADMISSION NO. 1:**
> Admit or deny that in the *year 2000 the CITY OF RENO became aware* that Reno Police Officer Paul Sifre suffered from a mental health condition or injury.
>
> **REQUEST FOR ADMISSION NO. 2**:
> Admit or deny that *in the year 2008 the CITY OF RENO was notified* by Reno Police Officer Paul Sifre that his mental health condition or injury *had become a disability*.
>
> **REQUEST FOR ADMISSION NO. 3:**
> Admit or deny that *in the year 2014 the CITY OF RENO was aware* that Reno Police Sergeant Paul Sifre suffered from a mental health condition that *was so severe to be a disability*.

> REQUEST FOR ADMISSION NO. 4:
> Admit or deny that in the year 2018 the CITY OF RENO was aware that Reno Police Sergeant Paul Sifre suffered from a mental disability.
>
> REQUEST FOR ADMISSION NO. 5:
> Admit or deny that in the year 2020 the CITY OF RENO was aware that Reno Police Sergeant Paul Sifre suffered from a mental disability.
>
> REQUEST FOR ADMISSION NO. 6:
> Admit or deny that in the year 2022 the CITY OF RENO was aware that Reno Police Sergeant Paul Sifre suffered from a mental disability.

**Exhibit 2**, 1st RFAs, p. 2 (Emphases added). These requests for admission appear to rely on Campbell's confidentially gleaned information from his past employment while at City from 2006 to 2014. Campbell's extensive internal knowledge of the workings of the City's Reno Police Department is also exemplified in an Order partially granting and partially denying the City's Motion to Dismiss the First Amended Complaint in the matter *Stegmaier v. City of Reno*, the Court acknowledges and notes Campbell's intimate involvement in RPD disciplinary matters:

> Plaintiff reported the video to Jack Campbell, Reno City Attorney, and was told to "keep the cat in the bag" and not report it to anyone. (*Id.*, ¶ 41.) During a meeting about the video on June 21, 2012, Campbell stated, "[t]his was all in fun, joking, was it not?" (*Id.*, ¶ 45.) Around this time, "[s]upervisory union officials contacted Plaintiff and warned him that Chief Pitts and Jack Campbell were 'circling the wagons' around DC Evans and Sgt. Myers" and that "Plaintiff would be made out to be the 'bad guy.'" (*Id.*, ¶ 46.).

*Stegmaier v. City of Reno*, No. 3:13-CV-00461-MMD, 2015 WL 4773711, at *3 (D. Nev. Aug. 13, 2015). Campbell also provided a Declaration in support of the City's legal position in this matter. *See* **Exhibit 3**, Declaration of Jack D. Campbell ("Campbell Declaration"). The Campbell Declaration makes clear the in-depth confidential personnel knowledge and expertise Campbell obtained regarding the inner workings of not only the City's police department, but also, the union-involved police officer employee disciplinary process and Internal Affairs investigation protocols at the City during Campbell's time of employment and legal representation of City

and the RPD. *Id.* at Para Nos. 1-5, 7 & 11-12. The Campbell Declaration also highlights the close relationship Campbell formed (and likely still holds) with the Chief of Police and other high-ranking officials at the City, and the conflict of interest that is created in this matter. *Id.* at Para Nos. 6 & 9. Campbell's relationships he built during his time of employment at the City and that he still likely maintains with many City employees who are currently employed within the RPD and other departments at City exemplifies the scope of the confidential information he is privy to that creates the bases for his unavoidable conflict of interest in this matter representing Plaintiffs alleging substantially similar claims that Campbell was once responsible for defending City Defendants against for almost a decade.

Campbell is aware of the conflict of interest that is apparent in this matter and has declined to withdraw as legal counsel for Plaintiffs. *See* **Exhibit 4**, City Defs. Letter to Campbell *see also* **Exhibit 5**, Campbell Response (Campbell email correspondence to City stating he declines to recuse himself from his current representation of Plaintiffs in this matter). City's letter to Campbell explained the existence of an unavoidable conflict of interest and the need for Campbell to withdraw from representation of Plaintiffs in this matter immediately, stating:

> Having that knowledge and exposure, you cannot represent Ms. Troup and Ms. McElroy without violating Nevada Rules of Professional Conduct 1.6, 1.9, 1.10 and 1.11. Please be advised that the City of Reno does not consent to your representation of Ms. Troup and Ms. McElroy. See Nevada Rule of Professional Conduct 1.11(a). Additionally, the City of Reno does not waive the confidentiality of any information you possess by virtue of your employment by, and representation of, the City.
>
> We request that you immediately take all necessary and appropriate actions to disassociate yourself from the representation of Ms. Troup and Ms. McElroy in connection with this lawsuit to comply with all your obligations to the City. If you do not withdraw from the representation and the lawsuit, City will be forced to file a motion to seek your disqualification from this case.

*Id.*

III.  **STANDARD OF REVIEW FOR DISQUALIFICATION**

Federal courts apply state law to decide whether a lawyer should be disqualified from representing a party based on a prior representation in a lawsuit. *Reading Int'l., Inc. v. Malulani Grp,*

*Ltd.*, 814 F.3d 1046, 1049 (9th Cir. 2016) (citing *In re City of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000)).  Trial courts are responsible for controlling the conduct of attorneys practicing before them. *Coles v. Ariz Charlie's*, 973 F. Supp. 971, 973 (D. Nev. 1997).  "While all may be fair in war, such is not the case in the judicial arena—the courtroom is not a battlefield." *Gomez v. Vernon*, 225 F.3d 1118, 1122 (9th Cir. 2001).  Doubts about disqualification are generally resolved in favor of disqualification, but "this assumes that the moving party has presented sufficient facts demonstrating that disqualification is a close call." *FLS Transp. Services, Inc. v. Casillas*, 3:17-CV-0013-MMD-VPC, 2017 WL 6043611, at *3 (D. Nev. Dec. 6, 2017) *(quoting Practice Mgmt. Solutions, LLC v. Eighth Jud. Dist. Ct.*, No. 68901, 2016 WL 2757512, at *3 n. 4 (D. Nev. May 10, 2016)).

Under Local Rule IA 11–7(a) an attorney admitted to practice before the U.S. District Court for the District of Nevada "must adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada." *Truesdell v. Donat*, 3:10-CV-00453-LRH, 2010 WL 3938361, at *2 (D. Nev. Oct. 4, 2010).

Conflicts of interest are governed by the Nevada Rules of Professional Conduct. Generally, they are based on a lawyer's continuing duties of loyalty and confidentiality owed to a client after the termination of a representation.  This case involves a conflict of interest relating to a former client and the failure of Campbell as a former governmental attorney for the City of Reno to receive written informed consent from not only the City, but also the other named defendants in this matter.  Nevada Rule of Professional Conduct ("NRPC") 1.9 (Duties to Former Clients) provides:

> (a) **A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter** in which that person's interests are materially adverse to the interests of the former client **unless the former client gives informed consent, confirmed in writing.**
> . . . .
> (c) **A lawyer who has formerly represented a client in a matter** or whose present or former firm has formerly represented a client in a matter **shall not thereafter**:

> (1) <u>Use information relating to the representation to the disadvantage of the former client</u> except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) <u>Reveal information relating to the representation</u> except as these Rules would permit or require with respect to a client.

(Emphases added.) NRPC 1.11[1] specifically relates to "Special Conflicts of Interest for Former and Current Government Officers and Employees," noting that:

> (a)  Except as law may otherwise expressly permit, <u>a lawyer who has formerly served as a public officer or employee of the government:</u>
> <u>(1)  Is subject to Rule 1.9(c); and</u>
> <u>(2)  Shall not otherwise represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation.</u>
>    . . . .
> (c)  Except as law may otherwise expressly permit, <u>a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person.</u> As used in this Rule, the term <u>"confidential government information" means information that has been obtained under governmental authority and which, at the time this Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and which is not otherwise available to the public</u>. A firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom.
>    . . .
> (e)  As used in this Rule, the term "matter" includes:
>    (1)  Any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy,

---

[1] Similar limitations placed on attorneys in private law firm practice can be found under NRPC 1.10.

      investigation, charge, accusation, arrest or other particular matter involving a specific party or parties, and
          (2)   Any other matter covered by the conflict of interest rules of the appropriate government agency.

(Emphases added.)  Furthermore, NRPC 1.6 provides guidance as to what constitutes "Confidentiality of Information," subsection (a) directly notes that "[a] lawyer shall not reveal information relating to representation of a client unless the client gives informed consent".

      The Nevada Supreme Court has established a three-part test to determine whether a lawyer must be disqualified based on a former client conflict.  *Nev. Yellow Cab Corp. v. Eighth Judicial District Court*, 123 Nev. 44, 50, 152 P.3d 737, 741 (2007).  A lawyer in Nevada must be disqualified from representing a client adverse to a former client if: (1) an attorney-client relationship existed, (2) the current and former matters are substantially related, and (3) the current representation is adverse to the former client.  *Id.*  Pursuant to the plain language of NRPC 1.9, the cases need only be substantially related.  *Id.*[2].

      "Nevada has adopted the 'substantially related' test for reviewing conflicts based on prior representation."  *FLS Transp. Services, Inc. v. Casillas*, 3:17-CV-0013-MMD-VPC, 2017 WL 6043611, at *3 (D. Nev. Dec. 6, 2017) (citing *Nev. Yellow Cab Corp.*, 152 P.3d at 741 and *Waid v. District Court*, 119 P.3d 1219, 1223 (Nev. 2005)).  Substantially related has been defined as identical or essentially the same.  *Government of India v. Cook Industries, Inc.*, 569 F.2d 737 (2d Cir. 1978).  A lawyer may not represent an adversary of his former client if the subject matter of the two representations is substantially related, which means: if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second.  *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1983).  The question is whether "the factual contexts of the two representations are similar or related." *Coles v. Arizona Charlies*, 973 F.Supp. 971, 974 (D. Nev. 1997).  "It makes sense that two cases may have some difference and still be similar or related."

---

[2] Although *Nev. Yellow Cab Corp.* dealt with the prior version of RPC 1.9—Supreme Court Rule ("SCR") Supreme Court Rule ("SCR") 159— it applies to this matter given the Rules are substantially the same.  *Id.* at 51, 741.

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

*FLS Transp. Services, Inc. v. Casillas*, 317CV0013MMDVPC, 2017 WL 6043611, at *5 (D. Nev. Dec. 6, 2017); *see also Sanchez v. American Family Mutual Insurance Co.*, 2012 WL 4498226 at *2 (D. Nev., Sept. 28, 2012); *Truesdell v. Donat*, 3:10-CV-00453-LRH, 2010 WL 3938361, at *2 (D. Nev. Oct. 4, 2010).

"A matter is substantially related to a prior matter 'if the factual contexts of the two representations are similar or related, regardless of whether confidences were in fact imparted to the lawyer by the client in the prior representation.'" *Coles v. Arizona Charlies*, 973 F. Supp. 971, 974 (D. Nev. 1997). The touchstone is "the precise relationship between the present and former representation." *Waid*, 119 P.3d at 1223. Further,

> [i]n proving that a prior representation is substantially related to present litigation, however, **the moving party is not required to divulge the confidences actually communicated,** nor should a court inquire into whether an attorney actually acquired confidential information in the prior representation which is related to the current representation. [Courts] should instead **undertake a realistic appraisal of whether confidences might have been disclosed in the prior matter that will be harmful to the client in the later matter**.

*Id.* at 1223 (quoting *Robbins v. Gillock*, 862 P.2d 1195, 1997 (Nev. 1993)(emphases added)). The focus is upon the general features of the matters involved and inferences as to the likelihood that confidences were imparted by the former client that could be used to adverse effect in the subsequent representation. Restatement (Third) of the Law Governing Lawyers, § 132, com. d(iii)(2000). Courts presented with this question should:

> (1) make a factual determination concerning the scope of the former representation, (2) evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters, and (3) determine whether that information is relevant to the issues raised in the present litigation.

*FLS Transp. Services, Inc. v. Casillas*, 2017 WL 6043611, at *3–4 (D. Nev. Dec. 6, 2017) (citing *Nev. Yellow Cab*, 152 P.3d at 742.).

///
///

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

IV. ARGUMENT

A. Campbell Must Be Disqualified

Campbell is applying his confidential knowledge obtained against his former client City Defendants in representing Plaintiffs in this matter in violation of NRPC 1.9 and 1.11. *See Truesdell*, 2010 WL 3938361, at *2 (attorneys that appear before this Court "must adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada."). Disqualification of Campbell in this matter is proper. Clear examples of Campbell's confidential knowledge of the internal workings of City are evident in Plaintiffs' pleadings, the wording of their discovery requests, and Campbell's past legal involvement in numerous civil litigation matters in which he defended City Defendants. *See* ECF No. 12, FAC, Para Nos. 39-44; Exhibits 1-3. Should this Court, however, determine the matter of Campbell's disqualification is a close call, doubts about disqualification are generally resolved in <u>favor of disqualification</u>. *See Casillas*, 2017 WL 6043611, at *3.

    a. <u>Campbell's Representation of Plaintiffs in this Matter Violates NRPC 1.9 and NRPC 1.11 and Campbell's Duty of Confidentiality and Loyalty to City Defendants</u>

As a licensed attorney in the State of Nevada Campbell owes City Defendants continuing duties of loyalty and confidentiality after the termination of his employment as a deputy city attorney for the City. Campbell's representation of Plaintiffs in this matter directly violates NRPC 1.9 and 1.11, as representing Plaintiffs herein constitutes legal representation in substantially similar matters to those prior lawsuits Campbell defended City against and thus constitutes a conflict of interest. *See supra*, Section II. Under NRPC 1.9 and 1.11, as a former government deputy city attorney, Campbell represented and defended City in multiple lawsuits alleging the very same claims Campbell has now brought on behalf of Plaintiffs against City. *See supra, id.* Furthermore, Campbell has failed to abide by NRPC 1.9(a) and NRPC 1.11(a) and did not obtain from City Defendants "informed consent, confirmed in writing" as to Campbell's current representation of Plaintiffs in this matter. *See* **Exhibit 4**, City Defs. Letter to Campbell.

Campbell is also now using confidentially obtained information during his time of employment at the Reno City Attorney's Office to the disadvantage of his former clients—City Defendants—in direct violation of NRPC 1.9(c) and NRPC 1.11(c), and without seeking prior informed consent. *See* NRPC 1.9(c) (A lawyer who has formerly represented a client in a matter . . . shall not thereafter: (1) Use information relating to the representation to the disadvantage of the former client.); *see also* NRPC 1.6(a) ("[a] lawyer shall not reveal information relating to representation of a client unless the client gives informed consent"). NRPC 1.11(c) defines "confidential government information" to include "information that has been obtained under governmental authority and which, at the time this Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and which is not otherwise available to the public."

The direct references to the outcome of confidential City Internal Affairs investigations in the FAC, the specific wording of discovery requests for confidential documents maintained by various City departments, requesting admissions regarding a former employee's mental health during the time Campbell was employed at City, and past litigation filings associated with Campbell's representation of City Defendants, and his extensive internal connections and relationships within City management and confidential knowledge of the Internal Affairs investigatory process and the RPD disciplinary procedures clearly support the existence of an undeniable conflict of interest. *See supra*, Section II.

b. **Campbell's Disqualification is Warranted Based on the Existence of a Former Client Conflict of Interest under the Nevada Supreme Court Three-Part Test**

The Nevada Supreme Court has established a three-part test to determine whether a lawyer must be disqualified based on a former client conflict. *Nev. Yellow Cab Corp.*, 123 Nev. at 50, 152 P.3d at 741. A lawyer in Nevada must be disqualified from representing a client adverse to a former client if: (1) an attorney-client relationship existed, (2) the current and former matters are substantially related, and (3) the current representation is adverse to the former client. *Id.* "Nevada has adopted the 'substantially related' test for reviewing conflicts based on prior representation." *Casillas*, 2017 WL 6043611, at *3; *Waid*, 119 P.3d at 1223.

Here, Campbell represented City Defendants in multiple prior matters where he directly represented and defended City and the RPD against the very same claims he brings here in this matter on behalf of Plaintiffs. *See supra*, Section II (compare claims listed in past Campbell cases in which he represented City Defendants with the claims alleged in the FAC here (*see* ECF No. 12)). Thus, the first and third factors of the three-part test to determine whether disqualification is warranted are met: an attorney-client relationship existed between City Defendants and Campbell from 2006 to 2014, and Campbell's current representation of the named Plaintiffs in this matter is adverse to Campbell's former client—City Defendants. *See generally*, ECF No. 12, FAC.

In addressing the remaining second factor of the three-part test: whether the current and former matters are substantially related, caselaw provides that the comparison does not require that the former matters that Campbell represented City Defendants in to be identical in fact or in every legal claim alleged in comparison to the current litigation matter to satisfy the "substantially related" standard. *See Casillas*, 2017 WL 6043611, at *5; *see also Sanchez*, 2012 WL 4498226 at *2; *Truesdell*, 2010 WL 3938361, at *2. The Nevada Supreme Court notes:

> [i]n proving that a prior representation is substantially related to present litigation, however, the **_moving party is not required to divulge the confidences actually communicated,_** nor should a court inquire into whether an attorney actually acquired confidential information in the prior representation which is related to the current representation. **_[Courts] should instead undertake a realistic appraisal of whether confidences might have been disclosed in the prior matter that will be harmful to the client in the later matter_**.

*Waid*, 119 P.3d at 1223 (quoting *Robbins*, 862 P.2d at 1997)(emphases added)). In *Waid*, the Nevada Supreme Court upheld the district court's disqualification of the lawyer concluding that since the former representation encompassed allegations that the former client (Del Mar) and its officers and directors were involved in a Ponzi scheme, it was reasonable for the court to infer that confidential information and likely quite sensitive information was given to the lawyer during the prior representation; and Plaintiff's 16.1 disclosure proclaimed that information

concerning the Ponzi scheme, the subject of the prior representation, was extremely relevant to the current litigation. *Waid*, 121 Nev. at 610-11, 119 P.3d at 1223.

Thus, Courts presented with this question should:

> (1) make a factual determination concerning the scope of the former representation, (2) evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters, and (3) determine whether that information is relevant to the issues raised in the present litigation.

*Casillas*, 2017 WL 6043611, at *3–4. Here, the information that Campbell was privy to as a deputy city attorney representing City Defendants is directly relevant to the current matter in which he represents Plaintiffs in their claims. *See* ECF No. 12, FAC. Further, it is more than reasonable to infer that confidential information was provided to Campbell in his legal position at the City while he represented City Defendants in multiple lawsuits alleging the same claims that Campbell brings forth now on behalf of Plaintiffs. *Id.* Here, seven cases are identified in which Campbell directly defended City Defendants where at least one of the alleged claims in this present matter were also alleged in those former matters. *See supra*, Section II. In addition to those seven, two additional cases are highlighted as particularly relevant to the analysis of "substantially related" because of the subject matter and confidential investigatory nature of those former matters, most notably one of them including a named defendant in this matter—Sifre—as the Plaintiff against whom Campbell defended City and the RPD. *See supra, id.*

As relevant to the claim of sexual harassment/discrimination in this matter, in *Coles*, 992 F.Supp. at 1214, the former and current representation involved different race discrimination claims against the same defendant. The Court held that in employment discrimination cases, **the past conduct of the defendant can be used to establish a pattern or practice of discrimination to support an employee's claim of discrimination**. *Id.* Because plaintiff alleged a pattern and practice of race discrimination, confidential information obtained by plaintiff's counsel in the former representation of defendant barred counsel from participating in the current case. *Id.* Here, there is no escaping the conclusion that Campbell was privy to confidential information in the course of representing City and the RPD over the course of eight

years, and most significantly when defending City and the RPD against a lawsuit brought by a named defendant in this matter—Sifre. *See, e.g., Costello v. Buckley*, 199 Cal. Rptr. 3d, 891, 898 (Ct. App. 2016) (disqualification was warranted where it was evident from requests for admission the attorney propounded that he was utilizing information he gleaned from his prior representation against his former client); *Ulrich v. Hearst Corp.*, 809 F.Supp. 229, 235-36 (S.D.N.Y. 1992) ("Adverse use of confidential information is not limited to disclosure. It includes knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses.").

The remaining second factor of the three-part test is also met, and therefore, requires the disqualification of Campbell.

## V. CONCLUSION

For these reasons, City Defendants request that this Motion to Disqualify be granted, and Campbell be precluded from any further participation or consultation in this matter whatsoever and be formally removed as attorney of record and named legal counsel for Plaintiffs.

DATED this 6th day of September, 2024.

KARL S. HALL
Reno City Attorney

By: /s/ Chandeni K. Sendall
CHANDENI K. SENDALL
Deputy City Attorney
Nevada State Bar No. 12750
Post Office Box 1900
Reno, Nevada 89505
*Attorneys for Defendants City of Reno,
Jason D. Soto, and Reno Police Department*

CERTIFICATE OF SERVICE

Pursuant to LR IC 5-1, I certify that I am an employee of the Reno City Attorney's Office, and that on this date, I am serving **DEFENDANTS CITY OF RENO, JASON D. SOTO, AND RENO POLICE DEPARTMENT'S MOTION TO DISQUALIFY** on the party(s) set forth below by:

__X__   CM/ECF electronic service, addressed as follows:

| Jack D. Campbell, Esq. | Ronald J. Dreher, Esq. |
| 418 River Flow Ct. | P.O. Box 6494 |
| Reno, NV 89523 | Reno, NV 89513 |
| *Attorney for Plaintiffs* | *Attorney for Defendant Paul D. Sifre* |

DATED this 6th day of September, 2024.

By: __/s/ Jeanette Sparks__
Jeanette Sparks
Legal Assistant

Exhibit List

| Ex. | Document |
|---|---|
| 1 | Plaintiff McElroy's First Request for Production of Documents to Defendant City of Reno |
| 2 | Plaintiff McElroy's First Request for Admissions to Defendant City of Reno |
| 3 | Declaration of Jack D. Campbell (ECF No. 7-3 filed in *Stegmaier vs. City of Reno ex rel., its Reno Police Department*, Case No. 3:13-cv-00461-MMD-VPC, in support of the City's Motion to Dismiss for Lack of Subject Matter Jurisdiction, or Alternatively, for Summary Judgment) |
| 4 | Letter dated May 1, 2024, requesting Mr. Campbell's withdrawal from representation of Plaintiffs |
| 5 | Email dated May 8, 2024, from Mr. Campbell responding to request for withdrawal |

Reno City Attorney
P.O. Box 1900
Reno, NV 89505