UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| APRYL MCELROY and JESSICA TROUP,<br><br>Plaintiffs,<br>v.<br><br>RENO POLICE SERGEANT PAUL D. SIFRE (RET.), an individual and in his capacity as an employee of CITY OF RENO; RENO CHIEF OF POLICE JASON D. SOTO (RET.), an individual and in his capacity as an employee of CITY OF RENO; CITY OF RENO, a municipal corporation organized and existing under the laws of the state of Nevada, and its division the CITY OF RENO POLICE DEPARTMENT, a Nevada law enforcement agency, and Does 1 through 20, inclusive,<br><br>Defendants. | Case No. 3:23-CV-451-ART-CSD<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS (ECF Nos. 32, 33) |

Plaintiffs Apryl McElroy and Jessica Troup bring this action against Defendants Sergeant Paul Sifre, the City of Reno, Reno Chief of Police Jason Soto, and the City of Reno Police Department. Plaintiffs bring claims Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e for sexual harassment based on a hostile work environment theory, and state law claims for negligent supervision, training, and retention.

Before the Court are Defendant Sifre's Motion to Dismiss (ECF No. 32) and Defendants Soto, City of Reno, and Reno Police Department's Motion for Partial Judgment on the Pleadings (ECF No. 33). For the reasons stated below, the Court denies the Motion to Dismiss Plaintiffs' hostile work environment claim. The Court further denies the Motion for Judgment on the Pleadings as to Plaintiffs'

1

hostile work environment and negligent supervision, training, and retention claims, but grants the motion as to Defendant Reno Police Department.

## I. Relevant Facts

Plaintiffs allege the following facts in their First Amended Complaint. (ECF No. 12.) At the time the following incidents occurred, McElroy was an employee of the University of Nevada, Reno Police Department. (*Id.* at 3-4.) Plaintiff Troup was at all relevant times an employee of the Washoe County Sheriff's Department. (*Id.* at 3, 5) Sifre was at all relevant times employed by the City of Reno as a police officer. (*Id.* at 3.) Soto was at all relevant times employed by the City of Reno as the Police Chief. (*Id.* at 3, 8.)

McElroy and Troup were both members of the Regional Narcotics Unit ("RNU"), a task force unit comprised of detectives from the Reno Police Department, Sparks Police Department, Washoe County Sheriff's Office, and University of Nevada Police Department. (*Id.* at 4-5.) The unit is supervised by the Reno Police Department and Washoe County Sheriff's Office. (*Id.* at 5.)

On September 26, 2021, the RNU, including McElroy and Troup, attended the Nevada Narcotics Officers Association conference in Las Vegas, Nevada. (*Id.*) They were the only two female detectives on the RNU at the time of the conference. (*Id.*)

The first alleged incident of harassment occurred when McElroy arrived at the conference and was on her way to the hotel room that she was sharing with Troup during the conference. (*Id.* at 5-6.) McElroy and another member of the RNU, Detective Nate Janning, ran into Sifre and his brother. (*Id.* at 5.) During this interaction, Sifre made a comment to McElroy that Troup likes to "eat out other women" and that Troup had told him that she had done so with another woman. (*Id.*) McElroy felt that the comment was "outrageous, insulting and demeaning," and made her very uncomfortable. (*Id.*)

Sifre then invited himself and his brother to have dinner that night with

McElroy and Janning. (*Id.* at 6.) At dinner, Sifre asked McElroy if she and Troup were going to "scissor" in bed that night since they were sharing a room. (*Id.*) The question made McElroy uncomfortable, and she left the table as soon as she was finished eating. (*Id.*) That evening, McElroy told Troup about the comments Sifre had made. (*Id.*) Troup denied ever telling Sifre about any sexual exploits. (*Id.*) Troup felt very uncomfortable and that the comments were made to demean and objectify both her and McElroy. (*Id.*)

The next day while leaving the training room, Sifre walked up behind McElroy and patted her on the head. (*Id.*) McElroy felt powerless and as though he was trying to intimidate her. (*Id.*) Other detectives who witnessed the incident made comments indicating that they thought Sifre's actions were inappropriate. (*Id.*) McElroy told her fellow detectives that she felt uncomfortable, and they stood behind her to shield her from any further contact by Sifre. (*Id.*)

That evening, the RNU members had dinner at a restaurant in the casino where the training was held. When McElroy and Troup arrived, the only seating available was at the same table as Sifre. (*Id.*) When they approached, Sifre looked at both Plaintiffs, made a gesture with his hands as though they were two pairs of scissors crossing into each other, and raised his eyebrows as if to ask if they had "scissored." (*Id.* at 7.) McElroy, angry and uncomfortable, left the area to find another seat. (*Id.*) Troup told Sifre that his comments were uncalled for, demeaning, and not ok. (*Id.*)

Troup reported these incidents to her direct sergeant, Sergeant Kevin Krush. (*Id.*) Sergeant Krush called McElroy to ask about the incidents on her way home from the conference and asked her to meet with the Washoe County Lieutenant and Reno Police Commissioner the following week. (*Id.*) Shortly thereafter, Sifre was removed from the RNU and given a no contact order, prohibiting him from contacting McElroy or Troup in any way. (*Id.*)

One to two weeks after the no contact order was issued, McElroy was

assigned to be at the RNU offices, by herself, to coordinate an operation. She arrived around 12:30pm. (*Id.*) McElroy later learned that Sifre had been in the building earlier that day, around 12pm, unescorted, to collect his personal belongings. (*Id.*)

An Internal Affairs ("IA") investigation was conducted regarding the reported sexual harassment. (*Id.*) The investigation concluded that Sifre had engaged in improper and illegal sexual harassment which created a hostile work environment for McElroy and Troup. (*Id.*) Plaintiffs allege that Defendants Soto, Reno Police Department, and the City of Reno intentionally delayed the investigation, and that Sifre was never disciplined for the conduct alleged. (*Id.* at 8-9.)

Plaintiffs also allege that that Sifre has been investigated numerous times by the Reno Police Department's IA Department. (*Id.* at 8.) They allege that these IA investigations involve confirmed and sustained complaints, including complaints about sexual misconduct and sexual harassment. (*Id.*) During his time at the RNU, Sifre repeatedly bragged to other RNU members that he had been investigated by IA more than a dozen times but was never punished or disciplined due to his close relationship with Police Chief Soto. (*Id.*)

## II. Hostile Work Environment Claim

Defendant Sifre's motion to dismiss argues that Plaintiffs' hostile work environment claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Defendants Soto, City of Reno, and Reno Police Department's motion for judgment on the pleadings argues that they are entitled to judgment on the pleadings under Fed. R. Civ. P. 12(c) as to this claim. Because a motion for judgment on the pleadings under Rule 12(c) is "functionally identical" to a motion to dismiss for failure to state a claim under Rule 12(b), the Court analyzes both Parties' motions in this section. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

### A. Legal Standard

#### 1. Dismissal for Failure to State Claim

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Under this standard, a district court must accept as true all well-pleaded factual allegations in the complaint and determine whether those factual allegations state a plausible claim for relief. *Id.* at 678-79.

#### 2. Judgment on the Pleadings

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is "functionally identical" to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Dworkin*, 867 F.2d at 1192. "When considering a motion for judgment on the pleadings, the court must accept as true all material allegations in the complaint and view them in the light most favorable to the plaintiff. *NL Industries v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986). Judgment on the pleadings is only proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Enron Oil Trading & Transp. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997)

(citing *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996), *cert. denied*, 519 U.S. 1081 (1997)). The Court should only dismiss the case if "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sun Savings and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987).

### 3. Hostile Work Environment

To state a hostile work environment claim under Title VII, a plaintiff must plead sufficient facts to plausibly allege: "(1) that [s]he was subjected to verbal or physical conduct of a sexual nature; (2) that this conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021).

### B. Analysis

Both motions argue that Plaintiffs have failed to plead facts sufficient to allege that the conduct was sufficiently severe or pervasive. Defendant Sifre's motion additionally briefly argues that Plaintiffs have failed to show that the conduct was of a harassing nature. The Court addresses each argument.

### 1. Conduct of a Harassing Nature

Defendant Sifre first argues that Plaintiffs fail to support their allegations that the conduct was harassing with facts. The Court disagrees. The alleged comments made by Sifre about "eating out other women" and "scissoring" are objectively sexual in nature and pertained to the Plaintiffs directly. *See Sharp v. S&S Activewear, L.L.C.*, 69 F.4th 974, 979 (9th Cir. 2023) (EEOC guidelines broadly define "[h]arassment on the basis of sex" to include "verbal ... conduct of a sexual nature"). A rational fact finder could conclude that the gesture made by Sifre was a reference to his comments regarding "scissoring," and thus that it was sexual in nature. Finally, a rational factfinder could conclude that the pat on the head, while not overtly sexual, was demeaning and harassing when coupled

with the other alleged conduct. *See Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 200 (2d Cir. 2014) ("Sex-based hostile work environment claims may be supported by facially sex-neutral incidents and sexually offensive acts may be facially sex-neutral.") (internal quotations omitted).

### 2. Severe or Pervasive Conduct

Whether or not the alleged conduct is sufficiently severe or pervasive to render working conditions abusive is subject to both an objective and subjective[1] test. *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995). The objective standard is met if a reasonable person would find it hostile or abusive; if a "reasonable woman would consider sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Ellison v. Brady*, 924 F.2d 872, 879 (9th Cir. 1991) (internal citations omitted); *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). In determining whether a work environment is hostile or abusive, courts must "consider all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Christian v.*

---

[1] The subjective standard is met if the plaintiff herself finds the conduct hostile or abusive. *Nichols v. Azteca Rest. Enterprises, Inc.*, 256 F.3d 864, 873 (9th Cir. 2001). Defendants do not contest that Plaintiffs perceived their environment as subjectively hostile. In any case, Plaintiffs have adequately plead that they themselves found the conduct hostile or abusive. Plaintiffs' complaint indicates that they felt that the conduct was unwelcome. (ECF No. 12 at 6-7) (stating that Plaintiffs found incidents outrageous, insulting, demeaning, intimidating and inappropriate, that Troup on one occasion responded to Sifre that his comments were "completely uncalled for and demeaning," and that on one occasion McElroy immediately told her colleagues that Sifre's action had made her feel uncomfortable.) Troup's complaint to Sergeant Krush about the conduct also indicates a perception that the conduct was subjectively unwelcome, hostile, and abusive. *See Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 687 (9th Cir. 2017) (evidence of repeated complaints demonstrates subjective perception that the workplace was hostile); *Nichols*, 256 F.3d at 873 (plaintiff's testimony that conduct was unwelcome as well as fact that plaintiff complained about conduct showed subjective hostility).

*Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020) (internal quotations omitted). No single factor in this non-exhaustive list is required. *Okonowsky v. Garland*, 109 F.4th 1166, 1179 (9th Cir. 2024) (internal quotations and citation omitted).

### a. Frequency

"The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Nichols*, 256 F.3d at 872 (internal quotation marks omitted). "A single incident of harassment…can support a claim of hostile work environment because the "frequency of the discriminatory conduct" is only one factor in the analysis. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967 (9th Cir. 2002) (citing *Harris*, 510 U.S. at 23 (noting that "no single factor is required")). Conduct can violate Title VII if it is either "sufficiently severe *or* pervasive." *Id.* (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (emphasis added)).

Here, Plaintiffs allege four incidents: (1) the September 26, 2021 exchange in which Sifre told McElroy that Troup liked to "eat out other women" ("oral sex comment"); (2) the September 26, 2021 exchange in which Sifre asked McElroy and Troup if they were going to "scissor" in their shared hotel room ("scissoring question") (3) the September 27 incident in which Sifre patted McElroy on the head ("head pat") and (4) the September 27 incident in which Sifre made scissoring gestures with his hands and raised his eyebrows at McElroy and Troup ("scissoring gesture"). While Defendants highlight the fact that the incidents occurred over a period of only two days, this in and of itself does not preclude a finding that the conduct was severe or pervasive. *See Little*, 301 F.3d at 967.

### b. Severity

The objective question of whether workplace conduct is sufficiently severe or pervasive to amount to a hostile environment is "is not, and by its nature cannot be, a mathematically precise test." *Harris*, 510 U.S. at 22. Three of the alleged incidents in this case were verbal and explicitly sexual in nature, and one

involved physical contact not of a sexual nature. In addition, Plaintiffs allege that the alleged harasser made his impunity, including for sexual misconduct, known to them—that Sifre repeatedly bragged that he had been investigated by IA more than a dozen times but was never punished or disciplined because of his close relationship with Police Chief Soto. *See Okonowsky*, 109 F.4th at 1180 ("[W]e have found that evidence of management-level, intra-workplace ratification of or acquiescence to offsite conduct by employees, customers, or third parties can be particularly relevant to both the hostile work environment and employer liability elements of a Title VII claim.").

The context of these incidents is important to examining their severity. The "real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998). McElroy and Troup were the only female members of the RNU at a professional conference. Each one of these incidents occurred in front of other RNU members—male colleagues of McElroy and Troup, and, as discussed below, was humiliating in nature. Considering all the circumstances—which are discussed in more depth below—at the motion to dismiss stage, the Court finds that Plaintiffs have plausibly alleged that the incidents in question were severe in nature.

### c. Threatening or humiliating

The Court finds that a reasonable juror could find that the conduct that Plaintiffs complain of was objectively humiliating. While the factor of humiliation is not explored in all hostile work environment cases, several courts have opined on what makes conduct objectively humiliating. The Eleventh Circuit has found that offensive conduct directed at a plaintiff in front of others is sufficient to show humiliation. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1277 (11th Cir. 2002) (use of derogatory names, directed at plaintiff and sometimes used in front

of others, demonstrated humiliation); *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1155 (11th Cir. 2020) (degrading comments in meetings in front of other workers was sufficient to show humiliation); *see also Smith v. Outdoor Network Distribution, LLC*, 626 F. Supp. 3d 1320, 1339 (M.D. Ga. 2022) (To determine whether conduct was objectively humiliating, courts look to "the very nature of the coworkers' utterances, whether the comments were directed at the plaintiff, and whether the comments were made in the presence of others.") (internal quotations omitted).

Conduct which is humiliating may be considered more egregious. *E.E.O.C. v. Int'l Profit Associates, Inc.,* 654 F. Supp. 2d 767, 788 (N.D. Ill. 2009) ("the fact that [physical conduct] occurred in front of at least one coworker is a reasonable basis for considering it more serious, since conduct designed to degrade or sexually humiliate the victim in front of coworkers is particularly egregious.") (citing *E.E.O.C. v. Int'l Profit Associates, Inc.*, No. 1 C 4427, 2008 WL 4876860 at *7 (N. D. Ill. 2008)); *Powell v. Blue Bird Body Co.*, No. 4:02-CV-043-HLM, 2005 WL 8244653, at *26 (N.D. Ga. Nov. 10, 2005) (While "merely offensive utterances are not actionable...if inappropriate comments are directed at the plaintiff, used to reprimand him, or uttered in front of others, then they could be considered humiliating and degrading and thus actionable."). Conduct which is humiliating still needs to be severe or pervasive. *Equal Employment Opportunity Comm'n v. OSI Rest. Partners, Inc.,* 2010 WL 11519281, at *8-9 (D. Ariz. Feb. 5, 2010) (single incident of physical contact in front of other people was humiliating, but not severe or pervasive enough to deny summary judgment for defendants on hostile work environment claim).

Here, each of the four incidents occurred in front of the Plaintiffs' male colleagues in the RNU. Three of the four incidents were explicitly sexual and directed at Plaintiffs. The oral sex comment suggested the two women would engage in sexual activity in their shared hotel room at the conference. The

1  scissoring comment and scissoring gesture suggested sexual behavior between
2  Plaintiffs, the only two women in the RNU. The complaint states that Plaintiffs
3  found these incidents insulting, demeaning, and objectifying. (ECF No. 12 at 6.)
4  The head pat incident, while not overtly sexual, could be found by a reasonable
5  juror to be humiliating in the context of all the alleged conduct—McElroy stated
6  that it made her feel as if he were trying to intimidate her and make her feel
7  powerless. (*Id.*); *Okonowsky*, 109 F.4th at 1182 ("[T]he totality of the
8  circumstances surrounding a Title VII claim includes offensive or retaliatory
9  conduct which would not, in isolation, violate Title VII."). Additionally, other RNU
10 members who witnessed the incident felt compelled to comment on how
11 inappropriate it was and acted to physically shield McElroy from Sifre.

### d. Interference with work performance

A plaintiff is not required to show "tangible effects" of discrimination, such as impaired work performance or psychological injury, to state a hostile work environment claim. *See Harris*, 510 U.S at 22-23. Rather, these are factors which may be considered in determining whether conduct was severe or pervasive. *Id.* Here, Defendants are correct that Plaintiffs have not specifically claimed that the alleged harassment interfered with their work performance. However, they are not required to do so. Plaintiffs have alleged that the conduct caused them to suffer from embarrassment, anguish, emotional pain, and loss of enjoyment of work activities. Additionally, the complaint states that Plaintiff McElroy left the RNU and took a position with the Washoe County District Attorney's office following the alleged harassment.

The Court finds that, considering the totality of the circumstances and the factors above, Plaintiffs have stated a hostile work environment claim. This was not one isolated incident. Rather, it was four temporally separate incidents over the course of two days, plus Sifre's repeated bragging regarding his impunity for all kinds of misconduct. Each of the four incidents could be found to be

11

objectively humiliating and therefore does not constitute a "mere utterance." *See Int'l Profit Associates*, 654 F. Supp. 2d at 788; *Powell*, 2005 WL 8244653, at *26. The circumstances of the incidents are important to this finding: these incidents occurred in a setting in which Plaintiffs were the only female officers, in front of their male colleagues. Additionally, Plaintiffs allegation that Sifre repeatedly bragged about his impunity can support a reasonable inference that Defendants consistent failure to address Sifre's problematic behaviors signaled to Plaintiffs that Sifre would ultimately face no consequences for his actions, and/or that his conduct was condoned. *Okonowsky*, 109 F.4th at 1182 (reasonable juror could conclude that failure to address conduct signaled that employer had no intention of protecting plaintiff from harassment and that this reinforced rather than remediated the sexual harassment).

The cases relied on by Defendants are in many ways distinguishable. Preliminarily, the Court notes that the cases Defendants cite are all at the summary judgment stage, in which a plaintiff faces a higher burden than Plaintiffs' face in the instant motions. In *Kortan v. California Youth Auth.*, a plaintiff's supervisor made a flurry of offensive comments about other women to her during an individual meeting, referring to other female employees as using terms like "regina," "Madonna," "castrating bitch," and "histrionics." 217 F.3d 1104, 1106-07 (9th Cir. 2000). While the Ninth Circuit found that the language was offensive, it was not severe or pervasive considering all the circumstances: it was concentrated on one occasion and occurred in the wake of another workplace dispute, and none of the comments were directed at the plaintiff. *Id.* at 1110-1111.

In *Ryan v. Barrick Goldstrike Mines Inc.*, the only alleged instance of harassment was one 30-minute exchange between coworkers. No. 3:19-CV-00286-MMD-CLB, 2021 WL 2018879, at *1 (D. Nev. May 19, 2021). The harassment constituted several overtly sexual comments that the court noted

12

"were not appropriate for the workplace." *Id.* at *5. Noting that "[t]he required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct," the court found that the severity of the conduct was insufficient to outweigh the fact that it occurred on only one occasion. *Id.* at *4-5 (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004)).

Both cases are distinguishable. First, in both cases there was only one incident. Second, neither of the incidents occurred in front of others in such a manner that would require the court to analyze whether the conduct was "humiliating." The cases cited by Defendants in their reply brief are also distinguishable. *Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000) (single incident of physical assault); *Smith v. Cnty. of Humboldt*, 240 F. Supp. 2d 1109 (N.D. Cal. 2003) (several incidents spanning over 10 days which were not objectively sexual in nature); *Panelli v. First Am. Title Ins. Co.*, 704 F. Supp. 2d 1016 (D. Nev. 2010) (infrequent incidents over a period of two years, most of which were not directed at plaintiffs). Here, there were four incidents, three of which were overtly sexual in nature and all of which were directed at Plaintiff(s) in front of male colleagues in a professional environment.

Particularly instructive here is the Second Circuit's decision in *Howley v. Town of Stratford*, 217 F.3d 141 (2d Cir. 2000). The plaintiff in *Howley* was the only female firefighter in the department at the time. *Id.* at 145. At a meeting, another firefighter told her to "shut the fuck up, you fucking whining cunt," made remarks about her menstrual cycle, and yelled in her direction "[t]here is no fucking way that I will fucking apologize to the fucking cunt down there." *Id.* at 148. After the meeting when she confronted him, he continued his verbal abuse and asserted that she did not make assistant chief because she did not "suck cock good enough." *Id.* The Second Circuit held that considering the circumstances, the single incident of verbal harassment was sufficient to survive summary judgment on plaintiff's hostile work environment claim. *Id.* at 154. The

13

1   comments were made in front of a large group in which she was the only female,
2   some of the men were her subordinates, and some of the comments were
3   connected to her ability to perform her job. *Id.* The court also noted that this was
4   an occupation that depended upon unquestioning execution of line-of-command
5   emergency situations, and fomenting disrespect as to the plaintiff may have the
6   effect of impairing her ability to lead her subordinates. *Id.*

7   There are many similarities here. Plaintiffs were the only female officers in
8   the RNU, and Sifre's alleged conduct was perpetrated in each instance in front of
9   Plaintiffs' male colleagues. Additionally, Plaintiffs noted in their opposition that
10  the work environment of the RNU is a "high exposure, high risk" law enforcement
11  unit, and that a reasonable juror could believe that the "high stress, high risk life
12  and death situations [] required the individual members of the RNU to trust and
13  rely upon their fellow members for their safety and wellbeing." (ECF No. 34 at 4.)
14  Like in *Howley*, the nature of Plaintiffs' job us such that fomenting disrespect
15  could impair Plaintiffs' experiences in the RNU unit.

16  The Court therefore DENIES Defendants' motions to dismiss and for
17  judgment on the pleadings as to Plaintiffs' hostile work environment claim.

18  **III.   Negligent Supervision, Training, and Retention Claim**

19  Defendants Soto, City of Reno, and Reno Police Department's motion for
20  judgment on the pleadings argues that Plaintiffs' claim for negligent supervision,
21  training, and retention is barred because Defendants are entitled to discretionary
22  act immunity.

23  **A. Discretionary Function Immunity**

24  Defendants argue that Plaintiffs' negligent supervision, training, and
25  retention claim must be dismissed because Defendants are entitled to
26  discretionary function immunity under Nevada Revised Statute § 41.032. The
27  Court disagrees. For the reasons outlined below, Defendants have not met their
28  burden of showing that they are entitled to dismissal due to discretionary

14

1  function immunity at this stage.

2  NRS 41.032 sets forth the discretionary function immunity exception to Nevada's general waiver of sovereign immunity. Under NRS § 41.032(2), an action may not be brought against a contractor, officer or employee of the State, its agencies, or political subdivisions which is "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused." Courts use a two-part test for determining whether discretionary-function immunity applies under NRS 41.0324. *Martinez v. Maruszczak*, 168 P.3d 720, 728-29 (Nev. 2007); *Butler v. Bayer*, 168 P.3d 1055, 1066-67 (Nev. 2007). A defendant is not liable for an allegedly negligent decision if the decision (1) involves an "element of individual judgment or choice," and (2) is "based on considerations of social, economic, or political policy." *Martinez*, 168 P.3d at 729.

Defendants argue, correctly, that the discretionary function exception applies to hiring, training, and supervision decisions under Nevada law. *Paulos v. FCH1, LLC*, 456 P.3d 589, 596 (Nev. 2020). "It is true that the Nevada Supreme Court 'has held that there is a strong public policy for granting employers broad discretion in managing their offices, and the hiring and firing of employees is a large part of management[.]'" *Salehian v. Nevada State Treasurer's Office*, 618 F. Supp. 3d 995, 1006 (D. Nev. 2022) (quoting *Cates v. Public Emps.' Ret. Sys. of Nev.*, 2008 WL 873611, at *6 (D. Nev. Mar. 27, 2008)).

However, discretionary function immunity does not apply when a defendant has acted in bad faith. *Id.* at 1005. ("The policy justification behind a discretionary act becomes irrelevant, however, when a Plaintiff properly alleges that the [d]efendant(s) had undertaken such action in bad faith."). The Nevada Supreme Court has explained: "[A]n abuse of discretion is characterized by an

application of unreasonable judgment to a decision that is within the actor's rightful prerogatives, whereas an act of bad faith has no relationship to a rightful prerogative even if the result is ostensibly within the actor's ambit of authority." *Falline v. GNLV Corp.*, 823 P.2d 888, 1009 n.3 (Nev. 1991); *see also Salehian*, 618 F. Supp. 3d at 1005. Where a plaintiff alleges that a decision was made in bad faith, the discretionary function exception does not apply and dismissal is not warranted. *See id.* at 1006; *Salehian*, 618 F. Supp. 3d at 1006 (denying dismissal based on discretionary function exception where plaintiff plausibly alleged that she was terminated in bad faith)).

Defendants argue that "[t]he nature of City Defendants' respective training policies necessarily involve individual judgment and policy considerations. Likewise, supervisory policies and procedures, and the decision whether to discipline or terminate an employee, inherently involve individual judgment and policy considerations." (ECF No. 33 at 12.) While this may be true, Plaintiffs allege that the City Defendants were required under NRS 289.823 to establish an early warning system to identify peace officers who display bias indicators or other problematic behavior, and that because of Sifre's "long list of complaints and IA investigations," the City Defendants had a "duty to identify Sifre through its Early Warning System, assign additional supervision, require additional training and counseling and to apply reasonable disciplinary policies and procedures, including terminating Sifre's employment."[2] (ECF No. 12 at 8.) Plaintiffs allege

---

[2] Defendants raised the argument for the first time in their reply that Plaintiffs cannot state a claim based on NRS 289.283 because the statute does not provide a private right of action for this type of claim and was not intended to protect individuals from claims of sexual harassment. The Court does not consider this argument here because Plaintiffs were not provided an opportunity to respond. *Brown v. Haaland*, 604 F. Supp. 3d 1059, 1091(D. Nev. 2022) ("The Court is not obligated to consider arguments raise for the first time in a reply."); *Padilla v. City of Richmond*, 509 F. Supp. 3d 1168, 1180 (N.D. Cal. 2020) ("As a general rule, courts do not consider arguments raised for the first time on reply.") (citing *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996)).

16

1 that Defendants failed to discharge this duty because Sifre was never punished
2 or disciplined. Plaintiffs also allege that Sifre repeatedly bragged that he had been
3 investigated by IA more than a dozen times but was never punished or disciplined
4 because of his close relationship with Police Chief Soto. Thus, Plaintiffs do not
5 allege that Defendants abused their discretion, rather, they allege that Sifre was
6 never identified, disciplined, or provided with additional training and supervision
7 because of favoritism—which is not a decision grounded in considerations of
8 social, economic, or political policy. *See Falline*, 823 P.2d at 1009 n.3 ("For
9 example, if an administrator decides to delay or deny a claimant's benefits
10 because of a personal dislike for the claimant, the delay or denial would be
11 attributable to an unauthorized act of bad faith."); *Coombes v. Washoe Cnty. Sch.*
12 *Dist.*, 2024 WL 1300065, at *4 (D. Nev. Mar. 27, 2024) (denying motion to dismiss
13 based on discretionary function immunity where plaintiff implicitly alleged bad
14 faith).

15 Plaintiffs have made plausible allegations of a decision made in bad faith.
16 Defendants broadly argue that the decision to discipline or terminate an employee
17 inherently involves policy considerations, but do not describe said policies or
18 apply them to the facts of this case. Accordingly, the Court finds that the
19 application of discretionary function immunity is not appropriate. *See Salehian*,
20 618 F. Supp. 3d at 1006 ("Plaintiff's plausible allegations of bad faith, coupled
21 with Defendants' lack of specific policy justification for Plaintiff's termination,
22 suffice to establish the impropriety of discretionary-act immunity with respect to
23 Salehian's claims.").

24 **IV.    Defendant Reno Police Department**

25 Defendants' motion for judgment on the pleadings argues that the Reno
26 Police Department cannot be sued because it is not a political subdivision of the
27 State of Nevada, citing *Wayment v. Holmes*, 912 P.2d 816, 819 (Nev. 1996), and
28 *Schneider v. Elko Cnty. Sheriff's Dep't*, 17 F. Supp. 2d 1162, 1164 (D. Nev. 1998).

17

Plaintiffs did not put forth an opposing argument in their response, but rather acknowledged that they "cannot and will not seek an individual judgment for damages against [the Reno Police Department]." (ECF No. 36 at 7.) Because Plaintiffs did not oppose dismissal of Reno Police Department and appear to concede this point, the Court grants Defendants' motion as to Reno Police Department.

**V.   Conclusion**

It is therefore ordered that Defendant Sifre's Motion to Dismiss (ECF No. 32) is DENIED.

It is further ordered that Defendants Soto, City of Reno, and Reno Police Department's Motion for Partial Judgment on the Pleadings (ECF No. 33) is GRANTED IN PART and DENIED IN PART. The motion is denied as to dismissal of Plaintiffs' hostile work environment and negligent supervision, training, and retention claims. The motion is granted as to Defendant Reno Police Department.

It is further ordered that Defendant Reno Police Department is DISMISSED as a Defendant in this action.

Dated this 18th day of March 2025.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE